## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**WILLIE M. ASHFORD, ET AL.**                                                         **PLAINTIFFS**

**v.**                                                              **CIVIL ACTION NO. 2:15cv27-KS-MTP**

**HERCULES, INC.**                                                                    **DEFENDANTS**

### OPINION AND ORDER

THIS MATTER is before the Court on Defendant's Motion for Entry of a *Lone Pine*[1] Case Management Order. After careful consideration of the motion, the submissions of the parties, and the applicable law, the Court finds that Defendant's Motion [18] for Entry of a *Lone Pine* Case Management Order should be GRANTED.[2]

### BACKGROUND

The instant action arises from the alleged migration of contaminants from a plant formerly operated by Defendant Hercules, Inc., onto the properties of forty-nine Plaintiffs located in Hattiesburg, Mississippi. Specifically, the Plaintiffs claim that "upon information and belief," constituents from the Hercules site have contaminated the air, soil and groundwater in and beneath their properties, which they claim are located "hydrogeologically downgradient"[3] from the Hercules site. They allege that this contamination has resulted in decreased property values, interference with

---

[1] *Lore v. Lone Pine Corp.*, 1986 WL 637057 (N.J. Sup. Ct. Law Div. Nov. 18, 1986).

[2] The case management order that will issue is a modified version of the one submitted by Defendant Hercules.

[3] The Court will assume for purposes of this Order that "hydrogeologically downgradient" means that the Plaintiffs' properties are located downhill from the Hercules site.

1

the Plaintiffs' property rights, and exposure to hazardous chemicals.[4]

The Court is particularly familiar with the claims brought by the Plaintiffs in this case, as several suits have been filed against Defendant Hercules alleging contamination of properties surrounding the plant in recent years. *Blackard v. Hercules, Inc.*, was filed in this Court on October 2, 2012. In *Blackard*, eleven Plaintiffs whose properties were located in close proximity to the Hercules site asserted claims of contamination.[5] Extensive discovery was completed in *Blackard*, including depositions and production of Hercules documents going back to 1923, before the case settled just prior to trial. On September 26, 2013, the city of Hattiesburg also filed suit against Hercules with similar allegations.[6] This case is currently pending before the Court.

Finally, on May 9, 2014, approximately 400 Plaintiffs filed a complaint alleging widespread contamination in *Abner, et al. v. Hercules*.[7] In *Abner*, Defendant Hercules filed a motion requesting the entry of a *Lone Pine* case management order requiring each Plaintiff to submit, *inter alia*, an expert affidavit demonstrating that his or her property and alleged migration pathway have tested positive for contaminants from the Hercules site.[8]

*Lone Pine* orders originate from a 1986 New Jersey Superior Court decision, where the court entered a pretrial order requiring the plaintiffs to provide facts in support of their claims through

---

[4]*See generally* Second Amended Complaint [24].

[5]*Blackard, et al. v. Hercules, Inc., et al.*, 2:12cv175-KS-MTP, Complaint [1].

[6]*City of Hattiesburg v. Hercules, Inc., et al.*, 2:13cv208-KS-MTP, Complaint [1], Amended Complaint [38], and Amended Complaint [73].

[7]2:14cv63-KS-MTP, Complaint [3] and Amended Complaint [12].

[8]*See* Motion for Entry of Lone Pine Case Management Order [18]; Memorandum in Support of Motion [19] at 6-7 in 2:14cv63-KS-MTP.

expert reports. While no federal rule expressly authorizes *Lone Pine* orders, multiple courts have interpreted Federal Rule of Civil Procedure 16 to confer such authority to courts in complex litigation. *See McManaway v. KBR, Inc.*, 265 F.R.D. 384, 384 (S.D. Ind. 2009) ("*Lone Pine* orders are permitted by Rule 16(c)(2)(L) of the Federal Rules of Civil Procedure which provides that a court may take several actions during a pretrial conference, including 'adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or usual proof problems.'").

The Untied States Court of Appeals for the Fifth Circuit has expressly upheld the entry of *Lone Pine* orders. *See, e.g., Acuna v. Brown & Root Inc.*, 200 F.3d 335 (5th Cir. 2000). Although commonly used in mass tort litigation, *Lone Pine* orders are also utilized by trial courts in cases where there are as few as fifteen plaintiffs. *Compare id. at 340* ("*Lone Pine* orders are designed to handle complex issues and potential burdens of defendants and the court in mass tort litigation."), *with Baker v. Anschutz Exploration Corp.*, No. 11-CV-6119-CJS, 2013 WL 3282880, at *1, 4 (W.D. N.Y. June 27, 2013) (finding conformance with *Lone Pine* order entered in a case where fifteen plaintiffs alleged environmental damage to their properties from defendants' gas and oil drilling).

Following the complete briefing of this issue in *Abner*, as well as a hearing, the Court granted Defendant's motion, and entered a *Lone Pine* case management order shortly thereafter.[9]

---

[9]*See* Order [35]; Case Management Order No. 1 [36] in 2:14cv63-KS-MTP. Specifically, the Case Management Order [36] in Abner required:

> On or before May 11, 2015, the Plaintiffs shall serve on the Defendants expert affidavit(s) demonstrating for each of their properties identified in the First Amended Complaint that:
>
> a.   The property and the alleged migration pathway has been sampled by a qualified expert;

3

The *Abner* case, as well as the Plaintiffs' compliance with the *Lone Pine* order, remain pending before the Court at this time.

Defendant Hercules has now filed a Motion for Entry of *Lone Pine* Case Management Order [18] in the instant action. Hercules argues that each Plaintiff should be required to demonstrate a *prima facie* case of causation and injury before reciprocal discovery commences. Hercules notes that while Plaintiffs seek damages for the alleged diminution in the values of their properties, they have by their own admission failed to conduct any testing of their properties in order to determine whether contamination is present.[10] Specifically, Hercules asks the Court to enter a case management order that requires the Plaintiffs for each of their properties to submit expert affidavits demonstrating: (1) the property and the alleged contaminant migration pathway have been sampled by a scientifically reliable method; (2) the samples have been analyzed by a qualified laboratory; (3) lab analysis detected constituents that have been detected on the site; and (4) lab analysis confirmed the existence of a migration pathway between the site and the property. Hercules also requests the Court to require the Plaintiffs to produce the documents generated in connection with

---

        b.    The samples have been analyzed by a qualified laboratory;
        c.    Lab analysis detected constituents that have been detected on the Hercules site; and
        d.    Lab analysis confirmed the existence of a migration pathway from the Hercules site to the property, or other cause.

The Case Management Order [36] also provided that the Plaintiffs in *Abner* would be afforded the benefit of the extensive discovery conducted in *Blackard*. The Court modified the Case Management Order by Order [42], in which the CMO was deemed amended to clarify that Plaintiffs may submit other forms of evidence supporting their assertion that contaminants originated from the Hercules site, and that the *Abner* Plaintiffs could also access the discovery conducted in *City of Hattiesburg v. Hercules*.

[10]Plaintiffs' counsel confirmed that no testing had been conducted during the Telephonic Case Management Conference held on May 26, 2015.

the sampling and lab analysis.[11]

Plaintiffs oppose the entry of the *Lone Pine* order, arguing that this case involves "only" forty-nine plaintiffs and forty-five properties, as opposed to the 400 plaintiffs in *Abner*. Plaintiffs also argue that they have not had the opportunity to conduct discovery as to the operations of the Hercules site or the use, production, or disposal of contaminants, as they have not had the benefit of the discovery conducted in *Blackard* or *City of Hattiesburg*. Plaintiffs request that in the event the Court finds a *Lone Pine* order is appropriate, they be provided with the materials produced in *Blackard* as well as sufficient time for expert review of the materials before their expert reports are due.[12]

In rebuttal, Defendant notes that the entry of *Lone Pine* orders are not wholly dependant on the number of Plaintiffs, citing *Baker v. Anschutz Exploration Corp.* in support. 2013 WL 3282880 at *1 (noting *Lone Pine* order entered in case involving only fifteen plaintiffs). Defendant further argues that no matter the number of Plaintiffs, the issues in this case involve complicated legal and factual issues that will be heavily expert dependent, necessitating the Plaintiffs to demonstrate a *prima facie* basis for the allegations in the complaint. Defendant does not oppose Plaintiffs' request for the *Blackard* discovery materials.[13]

## ANALYSIS

*Propriety of a Lone Pine Order*

Upon consideration of the Defendant's motion and the circumstances of this case, the Court

---

[11]*See* Memorandum in Support [19] at 6.

[12]*See* Amended Response [26].

[13]*See* Rebuttal [30].

finds that the entry of a *Lone Pine* order is appropriate.

The Plaintiffs contend that this case does not fall within the spectrum of litigation for which *Lone Pine* orders were designed, citing differences between the instant action and *Abner*. The Court, however, finds this argument unpersuasive. As an initial matter, the Court notes that although some Plaintiffs have voluntarily dismissed their claims in this action, the original group of Plaintiffs included some of the same individuals, and apparently the same properties, as those involved in *Abner*.[14] Moreover, although there are fewer Plaintiffs in the instant action than in *Abner*, forty-nine Plaintiffs and forty-five properties remain substantial numbers. The Plaintiffs' Response [26] also fails to acknowledge case law reflecting the entry of *Lone Pine* orders in cases with even fewer Plaintiffs than the present action. *See, e.g., Baker*, 2013 WL 3282880 at *1.

In any event, the instant action does not fundamentally differ from *Abner*. The Plaintiffs bring claims based on the suspicion that contaminants from the Hercules site have invaded their properties, just like the plaintiffs in *Abner*. In order to prove their case, the Plaintiffs must show that contaminants are indeed present on their properties, and they must provide at least a plausible explanation for how the alleged contaminants emanated from the Hercules site. That the Plaintiffs in this case make slightly different legal claims or seek alternative relief from those in *Abner*[15] does not change the fact that their claims arise from the same factual basis.

Also similar to the plaintiffs in *Abner*, the Plaintiffs' pleadings in this case offer little

---

[14]In fact, the Court granted an Unopposed Motion [28] to change the style of this case, as it was originally styled *Abner, et al. v. Hercules*, in order to avoid confusion with the other *Abner* case. *See* Order [29].

[15]The Plaintiffs argue in their Amended Memorandum in Opposition [27] that they do not seek mental anguish damages. The Court also notes that the Plaintiffs do not allege claims of trespass in their Amended Complaint [24], unlike the Defendants in *Abner*.

information as to the type and amount of contaminants found on their properties or the extent to which their property values have diminished.[16] Federal Rule of Civil Procedure 11(b)(3) requires that the pleadings in a civil case contain "factual contentions [that] have evidentiary support or, if specifically so identified, will likely have evidentiary support." *See* FED. R. CIV. PRO. 11(b)(3). Furthermore, the Fifth Circuit has held that "[e]ach Plaintiff should have at least some information regarding the nature of his injuries, the circumstances under which he could have been exposed to harmful substances, and the basis for believing that the named defendants were responsible for his injuries."*Acuna*, 200 F.3d at 340. As outlined above, the Plaintiffs in this case admit that they have conducted no testing of their properties, and they have presented no evidence to the Court in support of their claims beyond the proximity of their properties to the Hercules site and reports regarding the possible locations of contaminants on the Hercules site itself.

As noted by the Defendant, the issues presented in this case are expansive, complex, and will require considerable expense and effort to litigate. The purpose of a *Lone Pine* order is to discern which Plaintiffs have colorable claims before all parties incur substantial expense. As a final matter, the Court notes that in an ordinary civil case, expert reports are required by the Plaintiff early in the case management process after completion of some initial discovery. As outlined below, the Plaintiffs will be promptly afforded access to the discovery conducted in *Blackard* and *City of Hattiesburg*. Thus, requiring Plaintiffs to provide the information required by this order is not a significant departure from the usual course of a civil action.

---

[16]The Court notes that Plaintiffs list a myriad of chemicals that were produced on the Hercules site or later found on the site via testing by the Environmental Protection Agency. *See* Amended Complaint [24] at 4-13. However, Plaintiffs do not specify which of these chemicals, if any, may be present on their properties.

7

*Discovery from Blackard and City of Hattiesburg*

While there are striking similarities between the instant action and *Abner*, the Court notes that the Plaintiffs in this case are not identically situated, as they do not have the benefit of the discovery conducted in *Blackard* or *City of Hattiesburg*. The Plaintiffs request access to that discovery in their Response [26], and there is no objection from the Defendant. Accordingly, the Court finds that the Defendant shall promptly produce all discovery propounded in *Blackard* and *City of Hattiesburg,* as well as the results of any ongoing testing/sampling results of the Hercules site or surrounding area. Plaintiffs shall be afforded time for experts to review the discovery before beginning compliance with the *Lone Pine* case management order.[17]

Following Defendant's production of the *Blackard* and *City of Hattiesburg* discovery, however, no other discovery shall be conducted in this case except that which is provided in the forthcoming case management order or made upon motion supported by good cause. Once privy to the discovery conducted in previous cases, the Plaintiffs in this matter should not require additional discovery to demonstrate whether their own properties are contaminated.

IT IS, THEREFORE, ORDERED that Defendant's Motion [18] for Entry of a Lone Pine Case Management Order be GRANTED.

SO ORDERED this the 16th of October, 2015.

s/ Michael T. Parker
United States Magistrate Judge

---

[17]The Court notes that the *Blackard* and *City of Hattiesburg* discovery was propounded pursuant to protective orders. Likewise, the entry of a protective order in this case may be necessary in order to limit the use of such discovery in the instant action. The parties are urged to confer in an effort to agree to such order or, failing agreement, to address the issue via appropriate motion.